PONCE READY MIX CO., Appellant, *v.* LABOR RELATIONS BOARD OF PUERTO RICO, Appellee.

No. JRT-63-12.  Decided May 18, 1964.

---

*Alberto Picó Santiago* and *Francisco A. Rosa Silva* for appellant. *J. B. Fernández Badillo, Solicitor General, José Orlando Grau,* and *Celia Canales de González* for the Labor Relations Board.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: In January 1963 Ponce Ready Mix Co., appellant herein, laid off four employees affiliated with the Union of Chauffeurs and Operators of Ponce Ready Mix (Independent). Upon learning of such action, the Union required the employer to call the Grievance Committee for the purpose of discussing the propriety of these layoffs.[1] To that effect, on February 11 the parties requested the Secretary of Labor to designate the fifth member for the purpose of interpreting the clause of the agreement relative to layoffs[2]—"whenever the Company in laying off personnel for

---

[1] The pertinent part of Art. XIV of the collective agreement in force reads as follows:

"(A) Should any dispute or problem arise between the Company and any of the workers or employees which may give rise to the discharge of the worker or employee or any other disciplinary measure against the workers, it shall have the right to request that such incident be discussed and settled by the Grievance Committee composed of two representatives designated by the Union, two representatives designated by the Company, and a fifth member to be selected by mutual agreement. . . . If they fail to agree on the selection of the fifth member, the Secretary of Labor or the person whom the latter may designate shall then be designated to such office. The Committee shall also take cognizance of the settlement of disputes which may arise either as a result of the interpretation of this agreement or derived therefrom.

"·      ·      ·      ·      ·      ·      ·      ·

"(B) The Committee shall not intervene in the affairs of the Company of a purely administrative character, and shall take cognizance only of incidents or disputes which may arise between the contracting parties only involving acts of indiscipline or of interpretation, performance or violation of this agreement."

[2] The contract clause the interpretation of which is the object of arbitration reads as follows:

lack of work considers that it is not bound by the agreement to discuss the layoff with the Union." After the failure of the preliminary conciliation steps, on February 26 Rafael Font González, the arbitrator designated, formally opened the hearing. After an exchange of views the arbitrator stated that the parties had approved the following submission agreement: "To determine whether or not the Company is bound to agree with the Union on the reduction of personnel in reducing personnel for lack of work."[3]

At this stage of the proceedings the arbitrator called a recess which the parties used to discuss the advisability of stipulating certain facts on which there was no dispute. The hearing having been resumed, the Union representative started to state for the record the facts stipulated, having been interrupted by the stenographer who called the attention of the parties to the scope of what they were doing. The arbitrator intervened and warned the enterprise of the possibility that, even if it was right as to the dispute it might be resolved adversely to its position because of the inadequate presentation of the question. In view of this warning, the

---

"The Company and the Union . . . agree that whenever there is shortage of work and it is necessary to lay off personnel, the Company may do so by laying off those who may be working on a temporary basis . . . and if there is still shortage of work the Company may establish shifts in order to divide the work in equal hours as far and practical as possible, or may further lay off additional personnel if the shortage of work continues.

"The allocation of personnel for lack of work shall be made by mutual agreement with the Union . . . Provided, that the chauffeurs whose trucks are being repaired as a result of natural wear and tear or defects shall have the right to be assigned another unit, if any is available, in which case the Company shall assign one substitute truck."

[3] The evidence shows that the submission agreement was proposed by Union representative Maldonado to two representatives of the enterprise who had appeared at the hearing without assistance of counsel. From the minutes set up by the arbitrator it appears conclusively that after the submission agreement was announced the following took place:

"Mr. Font: Are the parties agreeable that this be the submission?
*Both parties:* Yes, sir."

enterprise moved to postpone the hearing, which was granted, and Font stated that "it is a right which you have and there is no objection to granting your petition. As soon as you are prepared to hear the case, you will notify me and a date will be set for holding the hearing in this case."

The enterprise appeared at the reopening of the hearing on March 25, assisted by counsel. In view of the importance it has for the purpose of deciding this petition, we quote from the minutes of that hearing:

"Mr. Maldonado:

"In view of the announcement made by the arbitrator that he plans to withdraw from the case and that he recommends that it be closed because, he said, *the parties have not reached an agreement on the submission which will be submitted to him for decision, the Union informs that it proposed the following submission* to the arbitrator: 'To determine whether or not the Company was bound under the collective agreement to discuss with the Union the question of *allocation* of personnel for lack of work.'

"Mr. Picó:

"...

"The Company proposed *as alternative* the following submission: 'To determine whether the Company has authority to cut down equipment or discard obsolete or useless equipment and to lay off the personnel which operates such equipment without previous approval by the Union.'

"...

"Mr. Font:

"The parties are granted 10 days . . . to notify the arbitrator *that they have agreed on the submission which will be submitted to the arbitrator for decision,* in order that the corresponding hearing be held in accordance with such submission. If the arbitrator fails to receive notice on the submission agreement . . . he will proceed in accordance with the circumstances."

None of the parties took steps to reach the submission agreement, as recommended by the arbitrator.

The Union resorted to the Labor Relations Board. It filed a charge of unfair practice against the enterprise within the meaning of subd. 1(f) of § 8 of the Labor Relations Act, 29 L.P.R.A. § 69(1)(f). The corresponding complaint was issued charging the enterprise with refusing and continuing to refuse to participate in the arbitration proceeding which it had commenced by requesting the Secretary of Labor to designate the fifth member.

Examiner M. Velázquez Rivera received the evidence warranting the findings of fact recited, which correspond substantially to those contained in his report. In its fundamental aspect Velázquez concluded that the employer had not committed the unfair practice charged. To that effect he stated that "Although it cannot be gainsaid that during the hearing held before the arbitrator on February 26, 1963, the representatives of the employer accepted the submission proposed by the Union, it is no less true that such acceptance was called off during the same hearing when the arbitrator was agreeable that appellees should have the necessary legal counsel. We cannot insist on the legal technicalities to such an extent as to consider the acceptance of the submission by the employee separate and apart from its subsequent request and leave to continue the proceedings. Actually there is only one action and only one motive. The employer did not consider itself adequately represented at the hearing, and any affirmative action on its part was set aside by an act of justice of the arbitrator."

The Board subscribed to all the findings of fact and conclusions of law of the Trial Examiner, with the exception of the commission of an unfair practice, on the ground that (a) "appellee at no time moved to call off the submission already agreed upon" on the basis of which the arbitration proceeding was commenced at the hearing held February 26, and (b) at the continuance of the hearing on March 23 it attempted to modify the previous submission agreement.

Consequently, it declared that the employer had committed an unfair practice and issued the corresponding cease-and-desist order, directing further that certain affirmative action be taken.

We agree with appellant that the order of the Board cannot be sustained, since it is not supported by the evidence admitted at the hearing before the Trial Examiner. The action of that agency may be sustained only if from an examination of the evidence it appears that the submission agreement of February 26 was not called off and that it prevailed for the purposes of the arbitration proceeding. The scant trustworthy indexes contained in the record point to a contrary evaluation, as correctly stated by the Trial Examiner in his report. In the absence of the testimony of the arbitrator which unquestionably constituted the best evidence of what actually happened at the hearing that day, considering in particular the obvious deficiencies of the minutes drawn up, the minor details which may shed light on the matter show that the parties called off the submission agreement in order to permit the enterprise, after obtaining counsel, to appear to support adequately the point of view which it had advanced. If this was not so, how do you explain that the arbitrator in postponing the hearing to a subsequent occasion made it depend on "as soon as you are prepared to hear the case," and that afterwards the Union itself proposed a submission agreement which, considering the problem involved in the light of the applicable clause of the agreement, was different from that of February 26?[4] Furthermore, the closing statements of the arbitrator urging the parties to reach an agreement on the submission which would be submitted

---

[4] The submission agreement of February 26 referred to the *reduction* of personnel for shortage of work; that proposed by the Union representative on March 25 refers to the *allocation* of personnel for lack of shop.

See footnote 2 in order to appreciate the importance of the difference between reduction of personnel and distribution of shifts.

to him for the purpose of arbitrating the dispute, are conclusive. Since the arbitrator is a person trained for these tasks, we have no question that if the submission of February 26 had not been called off and had prevailed the arbitrator would have proceeded to hold the hearing in pursuance of the terms thereof. See Updegraff and McCoy, Arbitration of Labor Disputes 116–31, particularly pp. 123–24 (2d ed. 1961).

The order of the Labor Relations Board of July 31, 1963, will be set aside and the complaint dismissed.